IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| PHYLLIS PUTNAM, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-CV-03024-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Phyllis Putnam seeks review of the Social Security Administration Commissioner's decision denying her application for disability insurance benefits and supplemental security income under Titles II and VII of the Social Security Act. Doc. 8. For the following reasons, the Commissioner's decision is reversed and remanded for further consideration.

**I.     Background**

Plaintiff was born in 1964 and has a high school education. Plaintiff alleges she became disabled on January 1, 2007, from the combined effects of degenerative disc disease and back pain, depression, headaches, and seizures. In January 2007, while Plaintiff worked in the medical field, she was attacked by a patient. As a result of the attack, she required back surgery, and a titanium rod and screws were inserted. Plaintiff alleges that since January 2007, she has suffered chronic back pain.

1

After Plaintiff's back surgery in January 2007, Plaintiff began seeking treatment for back pain in approximately June 2009. She sought treatment on average every two months until July 2012, with some visits occurring multiple times in a month and some visits as far as five to six months apart. Plaintiff underwent various forms of treatment including surgery with hardware placement, a walking and home exercise program, steroid injections, physical therapy, and a kyphoplasty. She was also prescribed narcotic medication. *See e.g.*, TR-286, 343, 442-43, 459-61, 573. In September 2011, Plaintiff suffered a seizure which resulted in a lumbar spine compression fracture and she underwent corrective surgery again. TR-339, 342-43. In June 2012, Plaintiff reported that her back pain was stable on medication, but that she suffered from shoulder pain. TR-602. She reported increased pain in July 2012 after a fall.

In April 2010, Plaintiff reported frequent headaches. TR-580. She complained of frequent headaches from August to November 2010. Plaintiff's physician discussed hydration, nutrition, identification of triggers, stress management and relaxation techniques, and nicotine and caffeine reduction as possible solutions. TR-570.

In March 2011, Plaintiff went to the hospital after suffering from a seizure. TR-369. She reported that she had a history of seizures but ceased taking medication for the condition in 2000. TR-413. Plaintiff also reported seizures in September 2011, July 2012, and possibly one other time in 2012. TR-342, 590.

There are four medical opinions in the record. In January 2011, Dr. Deborah Webster met with Plaintiff for a behavioral medicine evaluation and conducted two hours of psychological testing as well as a forty-five minute diagnostic interview. TR-280-82.

Dr. Webster opined Plaintiff had a pain disorder with both psychological factors and a general medical condition. TR-280. Plaintiff suffered from depression, most likely a dysthymic disorder. TR-280. She also suffered from migraines with aura and cervicalgia. Dr. Webster opined that Plaintiff "would benefit from participation in the intensive chronic pain day treatment program." TR-281.

In April 2011, Dr. Q. Michael Ditmore, a non-examining state agency consultant, reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment. TR-294-99. Dr. Ditmore opined Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally and stand, walk, or sit for a total of six hours in an eight hour day. TR-295. Plaintiff's ability to push or pull was unlimited. TR-295. Plaintiff was limited in her ability to reach. TR-296.

In May 2011, Dr. Robert Cottone, a non-examining state agency consultant, reviewed Plaintiff's records and completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. TR-300-313. Dr. Cottone opined Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence, or pace, and one or two repeated episodes of decompensation. TR-308. He opined that Plaintiff was markedly limited her ability to understand, remember, and carry out detailed instructions and her ability to maintain attention and concentration for extended periods. TR-311. She also had some moderate limitations in other areas of concentration and social interaction. TR-311-12.

In June 2012, Plaintiff's treating physician, Dr. Reed Click, completed a Medical Source Statement – Physical. TR-418-19. Dr. Click opined Plaintiff could lift and carry

five pounds frequently and ten pounds occasionally, stand or walk continuously for fifteen minutes for a total of three hours in an eight hour day, and sit continuously for thirty minutes for a total of four hours in an eight hour day. TR-418. Plaintiff's ability to push or pull was limited due to mid-upper back pain. Plaintiff would need to lie down or recline two times per day for thirty minutes to alleviate pain. TR-419. Dr. Click opined that Plaintiff's use of hydrocodone impaired her cognitive function.

After a hearing, an administrative law judge (ALJ) concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, headaches, seizures, and depression. TR-13. Plaintiff's impairments were severe in nature and reasonably expected to cause the symptoms she alleged, but the intensity, persistence, and limiting effects of these symptoms were not as severe as Plaintiff alleged. TR-18. In coming to this conclusion, the ALJ – among other observations – remarked that Plaintiff's treating physician, Dr. Click, rendered opinions unsupported by the record and that Plaintiff's statements as to the severity of her impairments were not completely credible. TR-18-20.

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work except she must have a sit-stand option with the ability to change positions every thirty minutes, can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. TR-17. She can never climb ropes, ladders, and scaffolds. She is limited to no more than frequent reaching overhead. She has exposure limitations. She can understand, remember, and carry out at least simple instructions and non-detailed tasks. She can demonstrate adequate judgment to make simple, work-related decisions

4

and can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and infrequent. She can perform repetitive work according to set procedures, sequence, or pace. TR-17. After presenting these limitations to a vocational expert, the vocational expert testified that Plaintiff could work as a bench assembler and an electric equipment or light fixture assembler. TR-23.

In support of his conclusions, the ALJ afforded "some weight" to Dr. Ditmore's and Dr. Cottone's opinions. The ALJ acknowledged that the opinions of non-examining consultants Dr. Ditmore and Dr. Cottone were are not generally due more weight than the opinion of a treating physician, but remarked that "some weight" was due to them, "particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." TR-21. It is unclear what, if any, weight the ALJ afforded Dr. Click's opinion, but the ALJ remarked that Dr. Click's opinion "apparently relied quite heavily on the subjective report of symptoms and limitations provided by" Plaintiff. TR-20. The ALJ also observed that Dr. Click's treatment notes revealed conservative treatment and failed "to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." TR-20.

## II. Discussion

Plaintiff argues the ALJ's decision is not supported by substantial evidence in the record because the ALJ improperly dismissed the opinion of Plaintiff's treating physician, Dr. Click, and improperly discredited Plaintiff's testimony and credibility. Doc. 8, at p. 1. The Court agrees.

### A. Weight Given to the Opinion of Plaintiff's Treating Physician

5

Plaintiff argues that substantial evidence in the record does not support the ALJ's reasons for discounting Dr. Click's opinion. Plaintiff also contends that the ALJ did not identify what weight, if any, was afforded to Dr. Click's opinion.

"A treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). An ALJ may disregard or discount a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions. *Id.* However, under 20 C.F.R. § 404.1527(c)(2), when the ALJ does not give the treating source's opinion controlling weight, he considers the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of an opinion with the record as a whole; (5) specialization of the physician; and (6) any other factors brought to the ALJ's decision. If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Id.*

Plaintiff argues that after determining Dr. Click's opinion was not due "controlling weight," the ALJ failed to weigh Dr. Click's opinion using the factors in 20 C.F.R. §§ 404.1527. Doc. 8, at 13. However, the ALJ did consider many of the factors outlined in § 404.1527(c). For example, the ALJ acknowledged that Dr. Click had a treatment relationship with Plaintiff, but remarked that Plaintiff's visits to him were relatively infrequent. TR-20. The ALJ also observed that the treatment pursued by Dr. Click "has

6

not been consistent with what one would expect if the claimant were truly disabled." TR-20. The ALJ also stated that Dr. Click's treatment records did not reveal significant clinical and laboratory abnormalities and that the opinion appeared to rely "quite heavily" on Plaintiff's subjective complaints. TR-20. All of these considerations are consistent with the requirements in 20 C.F.R. § 404.1527(c). Just because the ALJ did not explicitly discuss each of the factors in methodical fashion does not mean that all factors were not considered, particularly in light of the ALJ's discussion of some of them. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (ALJ's explicit reliance on some of a treating physician's conclusions makes it highly unlikely that the ALJ did not consider and reject other portions).

Nonetheless, while the ALJ did discuss the factors in 20 C.F.R § 404.1527(c), the reasons given by the ALJ for discounting Dr. Click's opinion are not supported by substantial evidence in the record. For instance, the ALJ remarked that Plaintiff visited Dr. Click infrequently, but the record reveals that Plaintiff met with Dr. Click fourteen times in a two year period. The ALJ also noted that Dr. Click's opinion regarding her ability to function was inconsistent with his conservative treatment. However, Dr. Click prescribed narcotic medication, and Plaintiff tried several treatment options in an attempt to alleviate her pain including steroid injections and physical therapy. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (holding that nothing in the record justified the rejection of the claimant's complaints of pain where he made consistent visits to the doctor, was on several medications, availed himself of many pain treatment modalities, had undergone surgery and diagnostic tests, and had an impressive work history).

7

Further, just because Dr. Click did not actually perform surgery on Plaintiff, does not mean that he was unaware of the surgeries and the hardware in her back when he rendered his opinion.

The ALJ further stated that a review of Dr. Click's treatment notes failed "to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." The ALJ did not identify what types of significant clinical and laboratory abnormalities would have been sufficient to discount Dr. Click's opinion and appears to have substituted his own opinion for that of Dr. Click's. *See generally Delrosa v. Sulivan*, 922 F.2d 480, 484 (8th Cir. 1991); *Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir. 1992). The Commissioner points to Dr. Click's treatment notes from the day he completed the Medical Source Statement, which reflect that Plaintiff reported her back pain as stable on medication. TR-602. However, stability does not mean her pain was better or that she experienced no pain; it means the pain was not worse. *Cf. Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001) ("[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

The ALJ also discounted Dr. Click's opinion because he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." This conclusion is not supported by substantial evidence in the record. The ALJ pointed to no evidence in the record that shows Dr. Click relied "quite heavily" on Plaintiff's subjective complaints. This Court has previously remanded a case when the ALJ in that

8

case made the same conclusion as the ALJ in this case without supporting the conclusion with evidence from the record. In *Bollmeyer v. Astrue*, 2011 WL 1769790 (W.D. Mo. 2011), the ALJ discounted the opinions of two treating physicians by stating – in language identical to that used by the ALJ in this case – that the "doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." *Id.* at * 8. This Court observed that it was unclear how the ALJ arrived at the conclusion that the treating physicians relied on the subjective report of the claimant. Rather than using boilerplate language, the ALJ was required to assess each treating physician's opinion individually with reference to the factors listed in 20 C.F.R. § 404.1527. *Id.* at *9. This case is no different. While the ALJ conducted a § 404.1527(c) analysis, the analysis was not supported by substantial evidence in the record, and the ALJ pointed to no evidence in the record to show Dr. Click's opinions were largely based on subjective complaints rather than Plaintiff's medical history and diagnoses and his treatment of her. Remand is necessary so that the ALJ may identify specific evidence to support his conclusions.

Further, the ALJ did not specifically identify what weight was given to Dr. Click's opinion. Even if a treating physician's opinion is not due "controlling weight," it does not mean the opinion should be rejected. SSR 96-2P, 1996 WL 374188 at *1 (S.S.A. 1996). Treating source opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." *Id.* at *4. An ALJ's decision must contain specific reasons for the weight given to the treating source's medical opinion "and must be sufficiently specific to make clear to any subsequent

9

reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at *5.

It is clear from the ALJ's discussion of Dr. Click's opinion that it was not afforded "controlling weight." However, this Court is unsure what weight, if any, the ALJ did give Dr. Click's opinion. Further, as discussed above, even if the ALJ provided little to no weight to Dr. Click's opinion based on his discussion of the § 404.1527(c) factors, the discussion of those factors is not supported by substantial evidence in the record.

The ALJ's decision is not supported by substantial evidence in the record and remand is necessary so that the ALJ may identify what weight was given to Dr. Click's opinion and to give specific, supported reasons for that weight. On remand the ALJ shall determine whether, after a review of the record, Dr. Click's opinion is due "controlling weight." If the opinion is not due "controlling weight," the ALJ shall assign a weight to Dr. Click's opinion and clearly identify reasons for that weight that are supported by substantial evidence in the record. If the ALJ determines that Dr. Click relied heavily on Plaintiff's subjective complaints, the ALJ should identify specific portions of the record he relied on to make that conclusion. If the ALJ concludes that Dr. Click's opinion should be discounted because his treatment notes did not reveal significant treatment or significant clinical and laboratory abnormalities, the ALJ should identify what kind of treatment or abnormalities would be sufficient and should support that conclusion with a medical opinion rather than his own.

### B. Credibility Determination

Although the ALJ's treatment of Dr. Click's opinion is alone sufficient to warrant remand, remand is also necessary so that the ALJ may provide a credibility determination that is supported by substantial evidence. While a claimant's credibility "is primarily for the ALJ to decide, not the courts," *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003), a court will not defer to the ALJ if the ALJ fails to give good reasons for discrediting the testimony. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). In this case, the ALJ did not give "good reasons" for discrediting Plaintiff's testimony.

First, in determining that Plaintiff's allegations of pain were not completely credible, the ALJ referred to his finding in Step 3 that Plaintiff had only mild limitations in her activities of daily living. However, the Step 3 analysis was a "paragraph B" finding that only considered Plaintiff's mental impairments, not her physical limitations. Reliance on the mental limitation evaluation is concerning particularly because Plaintiff's primary complaint is related to a physical limitation – back pain.

Next, even if applied to her complaints of physical pain, the reasons given in Step 3 do not support a finding that her complaints of pain are not credible or that Plaintiff is capable of sustaining competitive employment eight hours a day, five days a week. The ALJ remarked that Plaintiff could shop at the store every couple of weeks and helped with her family business by answering phones and doing paperwork and taxes. TR-18. The ALJ also remarked that Plaintiff spent time with her grandson and walked her son's dog. However, Plaintiff did not vacuum or sweep and needed help with laundry and bedding. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("This court has repeatedly stated that a person's ability to engage in personal activities such as cooking,

11

cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). As to the family business, Plaintiff testified that it was run out of the home she lived in with her parents and that she would answer phones if she happened to be at the house or "if someone needed to be gone." TR-54.

Further, the ALJ's conclusion that treatment and medication have been "generally successful" in controlling Plaintiff's symptoms is not consistent with the record of Plaintiff's back pain. While the record supports the ALJ's conclusions that Plaintiff's depression and seizure disorder were relatively controlled by medication, substantial evidence does not support a finding that her back pain was controlled by medication. The record reveals that Plaintiff tried several methods to alleviate pain without success.

The ALJ also observed that there were "significant periods of time since the alleged onset date during which the claimant" did not take any medication for her symptoms. However, the example cited by the ALJ – which involved Plaintiff taking Zanaflex once a day instead of three times a day – was overstated. On November 2, 2010, Plaintiff requested an increase in her Zanaflex prescription. TR-264. At that time, Plaintiff's doctor told her she could address her request with her other doctor the following week. On November 9, 2010, Plaintiff told her other doctor that she had been taking Zanaflex once a day instead of three times a day and that she was out of her prescription. Plaintiff was prescribed Zanaflex at that appointment, and there is no further indication that she was not compliant. TR-265. Further, during the time she was not taking Zanaflex as prescribed, there is no indication that she was not taking her other

12

Case 6:14-cv-03024-NKL   Document 12   Filed 10/17/14   Page 12 of 15

medications. The ALJ also stated that Plaintiff had discontinued taking medication for seizures in 2000 – seven years prior to her alleged onset date. TR-19. Yet, Plaintiff did not have a seizure for eleven years after she discontinued her seizure medication and resumed seizure medication after suffering from a seizure in March 2011.

The ALJ also stated that Plaintiff's symptoms appeared to be exacerbated by situational stressors. TR-19. Plaintiff argues that this conclusion is not supported by the record because there is objective evidence – MRIs and x-rays – that reveal abnormalities. Doc. 8, at p. 22. Plaintiff also argues she received treatment even when there were not situational stressors. *Id.* The ALJ's conclusion that Plaintiff's symptoms were "somewhat situational" is supported by the record – particularly by Dr. Webster's opinion. TR-19, 280. However, the ALJ does not explain how the fact that her pain is "somewhat situational" leads to the conclusion that her pain is not credible or that as a result, she is able to sustain full-time employment.

The ALJ further stated that Plaintiff was not always compliant with her doctor's recommendations. Namely, Plaintiff did not stop smoking after her doctor recommended cessation. However, there is substantial evidence that Plaintiff attempted to alleviate pain through other means such as the pain clinic, medication, injections, and physical therapy. The ALJ did not explain how her failure to stop smoking, in light of all the other efforts she made to stop her pain, renders her not credible. *See O'Donnell v. Barnhart*, 318 F.3d 811, 819 (8th Cir. 2003) ("The ALJ did not believe her subjective allegations of disabling pain because she had not stopped smoking . . . . Given the evidence of her attempts to alleviate pain through medication, physical therapy, trigger point injections, nerve

13

epidural clocks, and electrical stimulation, her failure to stop smoking . . . do[es] not show that her complaints were not credible.").

In addition to identifying what weight is given to Dr. Click's opinion and the reasons for that weight, remand is also necessary so that the ALJ can further consider Plaintiff's credibility. On remand, the ALJ shall conduct a credibility analysis that takes into consideration all the evidence in the record and not just the evidence that weighs against a finding of disability. In particular, the ALJ should consider whether Plaintiff's activities of daily living, her reported restrictions, and her medication regimen are truly consistent with a finding that Plaintiff's complaints are not credible and that she can sustain competitive employment. *See generally Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

### III. Conclusion

The ALJ did not provide "good reasons" for discounting Dr. Click's opinion and did not identify what weight, if any, was due to Dr. Click's opinion. Further, the ALJ's determination that Plaintiff was not credible is based on a selective view of the record and not on substantial evidence in the record. Remand is necessary so that the ALJ may assign a weight to Dr. Click's opinion, give reasons for that weight, and reevaluate Plaintiff's credibility in light of the entire record. If, after further consideration of the record, the ALJ determines a new RFC is necessary, the ALJ shall determine a new RFC and reevaluate Plaintiff's ability to work jobs that exist in significant numbers in the national economy. Therefore, the Commissioner's decision is reversed and remanded for further consideration consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  October 17, 2014
Jefferson City, Missouri